**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| MOUNT MATERIALS, LLC T/A THE MOUNT GROUP, | : : : | Civil Action |
| Plaintiff, | : : | No.: |
| vs. | : : | **COMPLAINT** |
| JOHN J. THOMAS, KELSEY N. THOMAS, JOHN DOES 1-10, JANE DOES 1-10, ABC COMPANIES 1-10, and XYZ CORPORATIONS 1-10, | : : : : : | **AND DEMAND FOR JURY TRIAL** |
| Defendants. | : : | |

## COMPLAINT

Plaintiff, Mount Materials, LLC ("Plaintiff" or the "Company" or "Mount"), by and through the undersigned attorneys, Florio Perrucci, Steinhardt, Cappelli & Tipton, LLC, files the within Complaint against the above-named Defendants, John J. Thomas ("J. Thomas"), Kelsey N. Thomas ("K. Thomas") (collectively, the "Defendants"), and in support thereof avers as follows:

## NATURE OF THE ACTION

1.      This action involves former employees taking, stealing, copying, saving, misappropriating, disclosing, disseminating and converting a materials and recycling company's data, records, proprietary and confidential information and trade secrets to establish a competing business or to divert customers to a competing business.

2.      Defendants, J. Thomas and K. Thomas, were formerly employed by the Company until they abruptly and voluntarily resigned from their respective positions in or around October of 2024.

3.      Following Defendants' resignation, Plaintiff discovered that, before their resignation, Defendants accessed, downloaded, saved or copied substantial proprietary and confidential information,

trade secrets and documentation of the Company from the Company's computers and server, including customer records, pricing information, customer lists, invoices, agreements and employee records.

4.      Plaintiff also discovered that Defendants either deleted or attempted to delete hundreds of files from Plaintiff's computer system servers.

5.      Defendants intentionally and willfully stole, misappropriated and converted Plaintiff's proprietary and confidential information and trade secrets to their personal advantage and to the Company's detriment.

6.      As a result of the Defendants' tortious and unlawful conduct, Plaintiff has sustained significant damages, both at the time of misappropriation and ongoing in nature.

## THE PARTIES

7.      Plaintiff, Mount Materials, LLC  is a Limited Liability Company organized and existing under the laws of State of New Jersey with a principal place of business at 427 S. White Horse Pike, Berlin, Camden County, New Jersey 08009.  Mount Materials, LLC is a full-service construction waste and recycling company. The Mount Group of companies consist of a full-service construction and site improvement company, a construction waste and recycling company and quarries with operations in the Mid-Atlantic Region, including New Jersey and Pennsylvania.

8.      Defendant, John J. Thomas, upon information and belief, is an adult individual who resides in the State of New Jersey at 1428 Mays Landing Road, Folsom, Atlantic County, New Jersey 08037.

9.      Defendant, Kelsey N. Thomas, upon information and belief, is an adult individual who resides in the State of New Jersey at 1428 Mays Landing Road, Folsom, Atlantic County, New Jersey 08037.

10.      Defendant J. Thomas is a former employee of the Plaintiff Company.

11.     Defendant K. Thomas is a former employee of the Plaintiff Company.

12.     Defendant K. Thomas is the daughter of Defendant J. Thomas.

13.     Defendants John Does 1-10 and Jane Does 1-10 are fictitious individuals who discovery and investigation may reveal to be responsible, in whole or in part, directly or indirectly, for the claims and damages alleged herein.

14.     Defendants ABC Companies 1-10 and XYZ Corporations 1-10 are fictitious entities who discovery and investigation may reveal to be responsible, in whole or in part, directly or indirectly, for the claims and damages alleged herein.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction over Plaintiff's principal claims arising under federal law pursuant to 28 U.S.C. §1331, 15 U.S.C. §1121 and 18 U.S.C. § 1836.

16.     This Court has supplemental jurisdiction over Plaintiff's related claims arising under the laws of the State of New Jersey pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that all Defendants reside in this District and are subject to personal jurisdiction in this District in accordance with 28 U.S.C. § 1391(b)-(c), in that a substantial part of the events or omissions giving rise to the claims occurred in this District in accordance with 28 U.S.C. § 1391(b)(2), in that a substantial part of property that is the subject of the action is situated in this District in accordance with 28 U.S.C. § 1391(b)(2), and in that Plaintiff regularly transacts business in this District, has a place of business in this District, and this lawsuit arises out of Defendants' activities in this District such that they are subject to personal jurisdiction in the District.

## GENERAL FACTS COMMON TO ALL COUNTS

### A.    Company Background

18.    The Company owns and operates various construction, construction material and construction waste and recycling operations throughout the Mid-Atlantic Region of the United States.

19.    The Company is engaged in interstate commerce throughout New Jersey, New York, Pennsylvania, Connecticut, Delaware and Maryland.

20.    The Mount Group consists of a group of companies, including: Mount Construction Company, Inc. (general full-service construction, site improvement and emergency response service provider), Mount Materials, LLC (construction materials recycling), Harleysville Materials, LLC (quarry), Pocono Sand & Stone (quarry), [previously] Bull Waste & Recycling (waste and recycling), Dive America (commercial diving and marine infrastructure) and Mount Charitable Foundation (charitable foundation).

21.    In or around August of 2024, the Company's subsidiary Bull Waste & Recycling, Inc. was sold to Mazza Recycling Services, Ltd.

22.    Plaintiff is the owner of valid and subsisting United States Trademarks and Design, Registration Nos. 5654145 (Mount Construction Company, Inc.), 5659819 (Harleysville Materials, LLC), 5791820 (Bull Waste & Recycling), 5797266 (Mount Materials, LLC), 6316635 (Dive America), and 5654066 (Mount Group), on the Principal Register in the United States Patent and Trademark Office for the trademark and design for The Mount Group (hereinafter, collectively the "Trademarks"). Attached as Exhibit 1 is a true and correct copy of the Registration Certificate for Plaintiff's United States Trademarks Registration Nos. 5654145, 5659819, 5791820, 5797266, 6316635, and 5654066, which were issued by the United States Patent and Trademark Office on or about May 10, 2018, May 11, 2018 and November 12, 2019.

23.     Plaintiff has used its Trademarks in interstate commerce throughout the United States, and specifically throughout the Mid-Atlantic Region, continuously since on or about May 10, 2018, May 11, 2018 and November 12, 2019, in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising and promotion of Plaintiff's goods and services.

24.     As a result of its widespread, continuous and exclusive use of its Trademarks to identify its construction materials and services, and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to its Trademarks.

25.     Plaintiff's Trademarks are distinctive to both the consuming public and Plaintiff's trade.

26.     Plaintiff has expended substantial time, money and resources marketing, advertising, and promoting the construction materials and services sold under its Trademarks.

27.     Plaintiff distributes and sells its construction materials and services under its Trademarks in the course of interstate commerce.

28.     Plaintiff offers and sells its construction materials and services under its Trademarks to various companies, including vendors, suppliers, haulers, demolition contractors, site and highways contractors, remediation and construction contractors, builders and/or customers.

29.     The construction materials and services Plaintiff offers under its Trademarks are of high quality, including, but not limited to: full-service construction, site improvement, and emergency response services specializing in structural concrete work, milling, paving and demolition; construction recycling of debris, concrete, asphalt, fill and job site waste; and production of high quality crushed concrete, sand, stone and aggregates throughout the Mid-Atlantic Region.

30.     As a result of Plaintiff's expenditures and efforts, its Trademarks have come to signify the high quality of the construction materials and services designated by its Trademarks, and acquired incalculable distinction, reputation and goodwill belonging exclusively to Plaintiff.

**B.**  **Defendants' Employment**

31.    On or about June 20, 2022, the Company hired Defendant K. Thomas in the position of Assistant General Manager of Mount Materials, LLC.

32.    Approximately one (1) year later, Defendant K. Thomas was promoted to the position of General Manager of Mount Materials, LLC and Bull Waste & Recycling.

33.    Defendant K. Thomas was responsible for general management of operations at the Company's Pennsylvania facilities but also had responsibilities tied to Plaintiff's New Jersey operations.

34.    On or about August 15, 2022, the Company hired Defendant J. Thomas in the position of President of Mining, Materials & Solid Waste Business Units.

35.    Defendant J. Thomas was responsible for Plaintiff's mining, recycling and solid waste operations at the Company's Pennsylvania facilities.

36.    Defendant J. Thomas frequently worked at the Company's Pocono Sand & Stone quarry located in Wayne County, Pennsylvania, in addition to working at the Company's New Jersey facilities.

37.    In their respective positions at the Company as President and General Manager, Defendants J. Thomas and K. Thomas had exclusive access to Proprietary and Confidential Information and Trade Secrets ("Proprietary and Confidential Information" and "Trade Secrets" more fully defined herein below).

38.    Plaintiff's Proprietary and Confidential Information and Trade Secrets were kept highly confidential, maintained internally and not in any public domain, restricted access to only certain Company employees and officers, and maintained on password protected devices and systems.

39.    Upon hire, every Company employee receives a copy of the Mount Materials, LLC Employee Handbook.

40.    Section 5-5 entitled "Confidential Company Information" of the Employee Handbook

states:

**5-5 Confidential Company Information**

During the course of work, team members may become aware of
confidential information about Mount Materials, LLC's business,
including but not limited to information regarding Mount Materials,
LLC finances, pricing, products and new product development,
software and computer programs, marketing strategies, suppliers and
customers and potential customers. Team members also may become
aware of similar confidential information belonging to Mount
Materials, LLC's clients. It is extremely important that all such
information remain confidential, and particularly not be disclosed to
Mount Materials, LLC's competitors. Any team member who
improperly copies, removes (whether physically or electronically), uses
or discloses confidential information to anyone outside of Mount
Materials, LLC may be subject to disciplinary action up to and including
termination. Team members may be required to sign an agreement
reiterating these obligations.

41.    Defendant J. Thomas received and acknowledged receipt of the Mount Materials, LLC

Employee Handbook.

42.    Defendant K. Thomas received and acknowledged receipt of the Mount Materials, LLC

Employee Handbook.

43.    Moreover, upon hire, Plaintiff requires employees to sign an Employment Agreement

that contains, amongst other terms, a Confidentiality provision that requires the employee to maintain

the confidentiality of its Confidential Information and Trade Secrets.

44.    The Confidentiality provision of the Company's Employment Agreement states:

**CONFIDENTIALITY**.  Employee recognizes that the Company has
and will have information regarding matters such as trade secrets,
customer lists, names and other identifying information of the
Company's customers, the names of referral sources, product designs,
financial records, the business records, systems, or practices used by the
Company, and other vital information (collectively, "Information"),
which are valuable, special and unique assets of the Company.
Employee agrees that Employee will not at any time or in any manner

to any person or entity, while employed and at all times thereafter, either directly or indirectly, divulge, disclose, or communicate in any manner any Information to any third party without the prior written consent of the Company. Employee will protect the Information and treat it as strictly confidential. Employee agrees to deliver promptly all confidential information, including, but not limited to, customer lists, files and records, in his possession or under his control. Employee further agrees that he will not make or retain any copies of any of the foregoing and will so represent upon termination of his employment. Notwithstanding the foregoing, Employee shall be precluded from disclosing information if required by legal process, provided that he shall give Company prompt notice of any such anticipated disclosure so that the Company may seek appropriate protective orders. A violation by Employee of this paragraph shall be a material violation of this Agreement and will justify legal and or equitable relief.

45.    Defendant J. Thomas signed the Employment Agreement that contains the foregoing Confidentiality provision requiring him to maintain the confidentiality of the Company's Proprietary and Confidential Information and Trade Secrets, including, but not limited to, its business information, records, operations, financial records, referral sources, pricing, customer lists, customers, employees, contractors, consultants, vendors and business partners.

46.    Defendant K. Thomas signed the Employment Agreement that contains the foregoing Confidentiality provision requiring her to maintain the confidentiality of the Company's Proprietary and Confidential Information and Trade Secrets, including, but not limited to, its business information, records, operations, financial records, referral sources, pricing, customer lists, customers, employees, contractors, consultants, vendors and business partners.

47.    In the course of engaging in business with various vendors, suppliers, contractors and customers throughout New Jersey, New York, Pennsylvania and Connecticut, the Company enters into various confidentiality and non-disclosure agreements that restrict and prohibit the use, disclosure or dissemination of confidential and proprietary information and trade secrets exchanged between and amongst Plaintiff and third-party businesses  in the course of conducting business dealings.

48.     By way of example, on or about August 22, 2024, Defendant J. Thomas entered into a Confidential Information and Non-Solicitation Agreement ("NSA") as part of the sale of Bull Waste & Recycling, Inc. ("Seller") to Mazza Recycling Services, Ltd. ("Buyer"). The NSA requires Defendant J. Thomas, on behalf of the Company's Seller, Bull Waste & Recycling, to maintain the confidentiality of the Buyer and Seller's Confidential Information (therein defined as information relating to the business, products, operations, assets, liabilities, customer lists, vendor lists, supplier lists and pricing) and not to solicit, induce, recruit or hire the Buyer's employees, consultants, clients, licensors or customers. The NSA further contains a non-disparagement clause.

49.     During the course of Defendants' employment with the Company, Defendants entered into negotiations with the Company to purchase the Company's subsidiary, Mount Materials, LLC. Agreements and other legal instruments to effectuate the sale of the Company to Defendants were drawn-up through attorneys for the respective parties; however, negotiations broke down and ultimately ceased.

**C.     Defendants' Resignation**

50.     On or about October 14, 2024, Defendants J. Thomas and K. Thomas voluntarily and abruptly resigned from the Company.

51.     Defendants' resignation was unexpected and without any prior notice.

**D.     Defendants' Unlawful Activities**

52.     Following Defendant's resignation, Plaintiff undertook an internal investigation, which included examination of Defendants' Company-owned electronic devices, hard drives, emails, accounts, travel records, credit card statements and expense records.

53.     As a result of its internal investigation, Plaintiff discovered that Defendants stole, extracted, acquired, downloaded, saved and/or copied proprietary and confidential information and

trade secrets ("Proprietary and Confidential Information" and "Trade Secrets") consisting of Company records, information, documentation and/or electronic data from Plaintiff's computers, network and server, including, but not limited to, the following: supplier lists, vendor lists, customer lists, customer introductory letters, customer quotes, pricing lists, project pricing, phone lists, customer contracts, orders, invoices, payment receipts, work orders, daily production sheets, daily activity logs, manifests, purchase orders, product information, operations information, processes information, assets, liabilities, employee onboarding records containing personal identifiers, employee payroll records, employee reviews, employee commission agreements, trucking summaries, MOUs, contractor sales pricing, material supply contracts, debris trucker agreements, hauler agreements, product usage, quarry equipment list, current material pricing, contractor sales pricing, trucking pricing, fuel volume, meeting notes, disposal agreements, customer haul rates, receipts, rate sheets, organizational charts, market data, business data, information on the sale of the solid waste company Bull Waste & Recycling, Inc. to Mazza Recycling Services, Ltd., emails embedded with confidential customer and other proprietary and confidential information and records of the Company.

54.     The Company records, information, documentation and/or electronic data stolen, extracted, acquired, downloaded, saved and/or copied by Defendants constitutes Proprietary and Confidential Information and Trade Secrets.

55.     At all times relevant hereto, the Company internally maintained the confidentiality and secrecy of its Proprietary and Confidential Information and Trade Secrets, took affirmative steps to prevent their disclosure or use in the public domain by restricting access to the information to certain high-level management at the Company, including Defendants, and maintained them on password protected devices and systems.

56.     Upon information and belief, prior to their resignation, Defendants extracted and "data-dumped" hundreds of Proprietary and Confidential Information and Trade Secrets into an external hard drive, a Dropbox account and/or some other independent electronic data storage software or hardware.

57.     Specifically, on or about October 12, 2024, two (2) days prior to his resignation, Defendant J. Thomas stole, extracted, downloaded, saved and/or copied from Plaintiff's server onto an external drive and/or Dropbox account at least approximately six hundred twenty-two (622) data items consisting of agreements, lists, emails, spreadsheets, records, information and documents containing Plaintiff's highly Proprietary and Confidential Information and Trade Secrets.

58.     Defendants also deleted and/or attempted to delete hundreds of other electronic files in an apparent attempt to destroy and/or cripple Plaintiff's business operations.

59.     At all times relevant thereto, Defendant J. Thomas had access to the Company's Proprietary and Confidential Information and Trade Secrets in his position as the Company's President of Mining, Materials & Solid Waste Business at Mount Group.

60.     At all times relevant thereto, Defendant K. Thomas had access to the Company's Proprietary and Confidential Information and Trade Secrets in her position as the Company's General Manager of Mount Materials, LLC and Bull Waste & Recycling.

61.     At all times relevant hereto, Plaintiff did not permit, authorize or otherwise consent to Defendants' taking, acquisition, use or disclosure of any of the Company's Proprietary and Confidential Information and Trade Secrets.

62.     Upon information and belief, after Defendants stole, extracted, downloaded, saved and/or copied Plaintiff's Proprietary and Confidential Information and Trade Secrets, they then attempted to or successfully deleted and/or destroyed Proprietary and Confidential Information and

Trade Secrets, including records, files, electronic data, documents and/or information, from the Company's computers, network or system server, including, but not limited to, the following:

     a.   Customer list of customers that entered the Company's recycling facilities during the two (2) years (2022-2024) which Defendants worked for the Company;

     b.   Pricing and rate sheets of the Company's customers;

     c.   Customer, supplier and vendor contracts;

     d.   Organizational and operational structure information;

     e.   Highly confidential electronic data created and maintained as required by the New Jersey Department of Environmental Protection ("NJDEP") regulations for auditing purposes, without which the Company can be forced to shut down in the event of an NJDEP audit; and

     f.   The Employment Agreements containing a Confidentiality provision that Defendants J. Thomas and K. Thomas entered into and executed upon being hired by the Company.

63.    Upon information and belief, the Company's security protocol prevented some of the electronic data, files and documents from being permanently deleted from the Company's server, despite efforts by Defendants to do so.

64.    Upon information and belief, shortly after resigning from the Company, Defendants established, helped establish, were hired and/or became officers or owners in a competing company to the Plaintiff Company.

65.    Hainesport Transportation Group ("HTG" or "Hainesport") is the parent company to a group of companies specializing in "cradle to grave" full-service residential, commercial and construction waste disposal, recycling and hauling through both truck and rail.  HTG's subsidiaries

include, but are not limited to, Champion Disposal, Creekside Landfill, Hainesport Secondary Railroad, Hainesport Transfer, R&B Debris and Technical Rail Services.

66.    Upon information and belief, prior to working for the Plaintiff Company, both Defendants J. Thomas and K. Thomas worked for HTG's subsidiary R&B Debris, LLC.

67.    In or around the Fall of 2024, HTG's Founder and CEO, Darryl Caplan ("Caplan"), contacted Mount's Founder and CEO, Dave Smith ("Smith"), to propose a buyout by HTG of Mount at a significant discount, which Smith rejected but instead proposed that the two (2) companies merge or form a business alliance.

68.    Caplan rejected any merger or collaboration of the two (2) companies and then advised Smith that HTG intended on opening a competing company with the assistance and/or collaboration of Defendants.

69.    Upon information and belief, in or about November 2024 through January 2025, Defendant K. Thomas helped establish and became President of Morrisville Materials, LLC ("Morrisville Materials"), a concrete recycling facility located in Morrisville, Pennsylvania.

70.    Upon information and belief, Morrisville Materials, LLC is a subsidiary of HTG.

71.    Upon information and belief, during the course of months prior to her resignation, Defendant K. Thomas was advising the Company's customers that she planned to leave Mount and begin working for HTG, and encouraged customers to leave and transfer their accounts from Mount to Hainesport.

72.    Upon information and belief, Morrisville Materials is located in Morrisville, Pennsylvania less than one (1) mile away from Plaintiff's Mount Materials facility located in Fairless Hills, Pennsylvania.

73.    Upon information and belief, Morrisville Materials leased a commercial property in close proximity to the Plaintiff Company.

74.    Mount Materials and Morrisville Materials both specialize in and operate concrete recycling facilities.

75.    Upon information and belief, Morrisville Materials is directly competing with Mount Materials.

76.    Within days of Defendants' resignation from the Company, the Company lost nearly ninety-five (95%) percent of its business.

77.    Specifically, from October 2024 through present, the Company business and revenue substantially dropped by approximately ninety-five percent (95%).  The Company's daily truck count decreased from on average one-hundred twenty (120) trucks per day to on average five (5) trucks per day.  During the corresponding time period, the Company's revenue decreased from approximately seventy-five thousand dollars ($75,000.00) per day to approximately three thousand dollars ($3,000.00) per day.

78.    Plaintiff's economic, market and business advantage has been detrimentally and materially changed after Defendants' resignation and as a result of Defendants' unlawful actions fully described herein.

79.    Upon information and belief, Defendants stole, used, disclosed, converted or diverted Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks, including Plaintiff's customers and accounts, to competing companies, including Morrisville Materials, ABC Companies 1-10 and/or XYZ Corporations 1-10.

80.    Upon information and belief, Defendants are engaged in trademark infringement and unfair competition practices, including, but not limited to, diverting customers, accounts and/or

Proprietary and Confidential Information, Trade Secrets and Trademarks to another business entity in which they have a business interest or to competitors in exchange for kickbacks, employment or other personal gain.

81.    Without Plaintiff's knowledge, authorization or consent, Defendants stole, extracted, downloaded, saved and/or copied Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks.

82.    Without Plaintiff's knowledge, authorization or consent, Defendants adopted, used, disclosed and/or disseminated Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks in interstate commerce.

83.    Defendants violated the Confidentiality provisions of the Company's Employee Handbook.

84.    Defendants violated the Confidentiality provisions of the Company's Employment Agreement, which they each executed upon hire.

85.    The infringing marks (the "Infringing Marks") adopted, used, disclosed and/or disseminated by Defendants are identical, substantially indistinguishable from or confusingly similar to Plaintiff's Trademarks.

86.    Upon information and belief, Defendants have been engaged in the manufacture, distribution, provision, marketing, advertising, promotion, offering for sale, and sale of construction materials and services using Infringing Marks of Plaintiff throughout interstate commerce in the Mid-Atlantic region.

87.    Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' construction materials and services, and have and are likely to deceive the relevant

consuming public into believing, mistakenly, that Defendants' construction materials and services originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

88.     Upon information and belief, despite his resignation, Defendant J. Thomas continues to falsely hold himself out as a Company employee and President of Mining, Materials and Solid Waste.

89.     On or about October 18, 2024, Plaintiff's counsel sent a cease-and-desist letter to Defendant J. Thomas objecting to Defendant's use of the Company's Proprietary and Confidential Information, Trade Secrets and Trademarks.  Attached hereto as Exhibit 2 is a true and correct copy of Plaintiff's October 18, 2024 cease-and-desist letter to Defendant J. Thomas.

90.     On or about October 21, 2024, Plaintiff's counsel sent a cease-and-desist letter to Defendant K. Thomas objecting to Defendant's use of the Company's Proprietary and Confidential Information, Trade Secrets and Trademarks.  Attached hereto as Exhibit 3 is a true and correct copy of Plaintiff's October 21, 2024 cease-and-desist letter to Defendant K. Thomas.

91.     To date, Plaintiff has received no response to its October 18, 2024 cease-and-desist letter to Defendant J. Thomas nor its October 21, 2024 cease-and-desist letter to Defendant K. Thomas, and, after reasonable inquiry, has no evidence that Defendants have responded to or complied with the demands set out in Plaintiff's cease and desist letters.

92.     Defendants' acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's construction materials and services to competitors, Defendants or persons or entities affiliated with Defendants.

93.     Defendants intentionally, maliciously and willfully stole, used, disclosed, misappropriated, infringed and/or converted Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks to their personal advantage and to the Plaintiff's detriment.

94.     Defendants' misappropriation of the Company's Proprietary and Confidential Information and Trade Secrets and infringement of the Company's Trademarks has substantially compromised the Company's goodwill, business and ability to operate.

95.     As a result of Defendants' unlawful and tortious conduct, the Company has sustained, and continues to sustain, significant damages.

## COUNT 1
## VIOLATION OF THE LANHAM ACT
### (Federal Trademark Infringement 15 U.S.C. § 1114(1))

96.     Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

97.     Defendants have used, adopted, disclosed or disseminated Plaintiff's Trademarks without Plaintiff's knowledge, authorization or consent.

98.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

99.     Defendants' unlawful conduct constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

100.    Upon information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in its Trademarks and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

101.    As a result of Defendants' misappropriation of and infringement upon Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks, Plaintiff has suffered significant damages, including, but not limited to, loss of actual and potential customers, loss of actual

and potential contracts, loss of actual and potential business opportunities, and harm to its business, goodwill and reputation.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

## COUNT 2
### VIOLATION OF THE LANHAM ACT
#### (Federal Unfair Competition 15 U.S.C. § 1125(a))

102.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

103.    Defendants have used, adopted, disclosed or disseminated Plaintiff's Trademarks without Plaintiff's knowledge, authorization or consent.

104.    Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendants are in some way affiliated with or sponsored by Plaintiff.

105.    Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

106.    Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

107.    Defendants' unlawful conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

108.    As a result of Defendants' unfair competition, misappropriation of and infringement upon Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks, Plaintiff has suffered significant damages, including, but not limited to, loss of actual and potential customers, loss of actual and potential contracts, loss of actual and potential business opportunities, and harm to its business, goodwill and reputation.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

### COUNT 3
### VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT
### (18 U.S.C. § 1836)

109.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

110.    The Company Proprietary and Confidential Information and Trade Secrets, consisting of financial, business and economic information, constitute "trade secrets" under the Defend Trade Secrets Act, 18 U.S.C. § 1839.

111.    The Company took reasonable measures to keep its Proprietary and Confidential Information and Trade Secrets confidential and secret by, including but not limited to: maintaining the information, data and records be kept internally confidential and secret; prohibiting the information, data and records from being released into the public domain; password protecting the information, data and records; restricting access to the information, data and records to upper-level management; and requiring non-disclosure or confidentiality agreements with employees or officers who have access to the information, data and records.

112.    The Company Proprietary and Confidential Information and Trade Secrets were not generally known and were not readily ascertainable through proper means by persons or entities outside of the Company and its organization.

113.    The Company Proprietary and Confidential Information and Trade Secrets, consisting of customer lists, pricing, quotes, invoices, and agreements, contain highly confidential and secret information with independent economic value derived from the use or disclosure of such information to the Company's market competitors.

114.    The Company Proprietary and Confidential Information and Trade Secrets were related to products and services used in, or intended for use in, interstate commerce.

115.    Defendants had exclusive and confidential access to Plaintiff's Proprietary and Confidential Information and Trade Secrets, including Company information, data and records, such as employee records, customer records, customer lists, pricing, invoices, quotes, rates and agreements.

116.    Plaintiff did not, at all times relevant hereto, authorize or consent to the Defendants' acquisition, use or disclosure of its Proprietary and Confidential Information and Trade Secrets.

117.    Defendants improperly acquired, used, disclosed and misappropriated Plaintiff's Proprietary and Confidential Information and Trade Secrets through improper means, including, but not limited to, theft, bribery, misrepresentation, breach of an express or implied duty to maintain the secrecy of the Company's Trade Secrets, breach of an express or implied duty to limit the use or disclosure of the Company's Trade Secrets, and espionage by electronic or other means.

118.    Defendants improperly acquired, used, disclosed and misappropriated Plaintiff's Proprietary and Confidential Information and Trade Secrets by using it to derive their own actual or potential independent economic value.

119.    Defendants improperly acquired, used, disclosed and misappropriated Plaintiff's Proprietary and Confidential Information and Trade Secrets by disclosing it to persons, entities or third parties who can derive economic value from its use or disclosure.

120.    Defendants' misappropriation of Plaintiff's Proprietary and Confidential Information and Trade Secrets constitutes violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836(b).

121.    Defendants' misappropriation of Plaintiff's Proprietary and Confidential Information and Trade Secrets was willful and malicious.

122.    As a result of Defendants' misappropriation of Plaintiff's Proprietary and Confidential Information and Trade Secrets, Plaintiff has suffered significant damages, including, but not limited to, loss of actual and potential customers, loss of actual and potential contracts, loss of actual and potential business opportunities, and harm to its business, goodwill and reputation.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

## COUNT 4
## VIOLATION OF THE NEW JERSEY TRADE SECRETS ACT
### (N.J.S.A. §§ 56:15-1 *et seq.*)

123.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

124.    The Company Proprietary and Confidential Information and Trade Secrets, consisting of financial, business and economic information, constitute "trade secrets" under the New Jersey Trade Secrets Act ("NJTSA"), N.J.S.A. § 56:15-2.

125.    The Company took reasonable measures to keep its Proprietary and Confidential Information and Trade Secrets confidential and secret by, including but not limited to: maintaining the information, data and records be kept internally confidential and secret; prohibiting the information, data and records from being released into the public domain; password protecting the information, data and records; restricting access to the information, data and records to upper-level management; and requiring non-disclosure or confidentiality agreements with employees or officers who have access to the information, data and records.

126.    The Company Proprietary and Confidential Information and Trade Secrets were not generally known and were not readily ascertainable through proper means by persons or entities outside of the Company and its organization who can obtain independent economic value from its disclosure or use.

127.    The Company Proprietary and Confidential Information and Trade Secrets, consisting of customer lists, pricing, quotes, invoices, and agreements, contain highly confidential and secret information with independent economic value derived from the use or disclosure of such information to the Company's market competitors.

128.    The Company Proprietary and Confidential Information and Trade Secrets were related to products and services used in, or intended for use in, interstate commerce.

129.    Defendants had exclusive and confidential access to Plaintiff's Proprietary and Confidential Information and Trade Secrets, including Company information, data and records, such as employee records, customer records, customer lists, pricing, invoices, quotes, rates and agreements.

130.    Plaintiff did not, at all times relevant hereto, authorize or consent to the Defendants' acquisition, use or disclosure of its Proprietary and Confidential Information and Trade Secrets.

131.     Defendants improperly acquired, used, disclosed and misappropriated Plaintiff's Proprietary and Confidential Information and Trade Secrets through improper means, including, but not limited to, theft, bribery, misrepresentation, breach of an express or implied duty to maintain the secrecy of the Company's Trade Secrets, breach of an express or implied duty to limit the use or disclosure of the Company's Trade Secrets, and espionage by electronic or other means.

132.     Defendants improperly acquired, used, disclosed and misappropriated Plaintiff's Proprietary and Confidential Information and Trade Secrets by using it to derive their own actual or potential independent economic value.

133.     Defendants improperly acquired, used, disclosed and misappropriated Plaintiff's Proprietary and Confidential Information and Trade Secrets by disclosing it to persons, entities or third parties who can derive economic value from its use or disclosure.

134.     Defendants' misappropriation of Plaintiff's Proprietary and Confidential Information and Trade Secrets constitutes violation of the New Jersey Trade Secrets Act, N.J.S.A. §§ 56:15-1 et seq.

135.     Defendants' misappropriation of Plaintiff's Proprietary and Confidential Information and Trade Secrets was willful and malicious.

136.     As a result of Defendants' misappropriation of Plaintiff's Proprietary and Confidential Information and Trade Secrets, Plaintiff has suffered significant damages, including, but not limited to, loss of actual and potential customers, loss of actual and potential contracts, loss of actual and potential business opportunities, and harm to its business, goodwill and reputation.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

## COUNT 5
## VIOLATION OF NEW JERSEY COMPUTER RELATED OFFENSES ACT
### (N.J.S.A. §§ 2A:38A-1 *et seq.*)

137.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

138.    The Company's Proprietary and Confidential Information, Trade Secrets and Trademarks constitute data, information and/or property that is stored on Plaintiff's computers, computer equipment, computer network, computer server, computer programs, computers software, computer hardware and/or computer system under the New Jersey Computer Related Offenses Act ("NJCROA"), N.J.S.A. §§ 2A:38A-1 et seq.

139.    The Company's Proprietary and Confidential Information, Trade Secrets and Trademarks contain highly sensitive financial and personally identifying data, information and/or property regarding Plaintiff's customers and employees.

140.    Defendants purposefully or knowingly and unlawfully altered, damaged, accessed, took or destroyed Plaintiff's data, data base, computer, computer program, computer system, computer network, computer software or computer equipment, existing internally or externally to a computer, computer system or computer network without authorization or consent.

141.    Defendants purposefully or knowingly accessed and recklessly altered, damaged, accessed, destroyed and/or obtained Plaintiff's data, data base, computer, computer program, computer system, computer network, computer software or computer equipment without authorization or consent.

142.    Defendants purposefully or knowingly and unlawfully altered, accessed, tampered with, obtained, intercepted, damaged and/or destroyed Plaintiff's financial information or instruments without authorization or consent.

143.    As a result of Defendants' purposeful, knowing and unlawful access, alteration, taking, damage and/or destruction of Plaintiff's data, data base, computer, computer program, computer system,

computer network, computer software, computer equipment and/or financial information or instruments, Plaintiff has been significantly damaged in its business or property.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

## COUNT 6
## UNFAIR COMPETITION

144.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

145.    Defendants' unlawful acts constituted common law Unfair Competition.

146.    Defendants appropriated Plaintiff's name, brand, trademark, reputation or goodwill.

147.    Defendants' appropriation of Plaintiff's name, brand, trademark, reputation or goodwill constitutes unfair competition under N.J.S.A. 56:4-1 et seq.

148.    As a result of Defendants' appropriation of Plaintiff's name, brand, trademark, reputation or goodwill, Plaintiff has suffered significant damages, including, but not limited to, loss of actual and potential customers, loss of actual and potential contracts, loss of actual and potential business opportunities, and harm to its business, goodwill and reputation.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

## COUNT 7
## MISAPPROPRIATION OF TRADE SECRETS

149.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

150.    Defendants' unlawful acts constituted common law Misappropriation.

151.    Defendants' misappropriation of Plaintiff's Proprietary and Confidential Information and Trade Secrets was willful and malicious.

152.    As a result of Defendants' misappropriation of Plaintiff's Proprietary and Confidential Information and Trade Secrets, Plaintiff has suffered significant damages, including, but not limited to, loss of actual and potential customers, loss of actual and potential contracts, loss of actual and potential business opportunities, and harm to its business, goodwill and reputation.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

## COUNT 8
## TORTIOUS INTERFERENCE WITH CONTRACT

153.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

154.    In the course of conducting ordinary business, Plaintiff entered into various contracts with numerous third-party vendors, suppliers, contractors, haulers and/or customers.

155.    At all times relevant thereto, these contracts were valid and enforceable.

156.    Defendants knew that the contracts between Plaintiff and third parties existed.

157.    Defendants had access to the contracts between Plaintiff and third parties.

158.    Defendants intentionally and wrongfully interfered with these contracts by stealing, copying, misappropriating, disclosing and/or otherwise using the contracts to negotiate competing contracts with the same or similar industry businesses.

159.    Defendants' interference was intentional and unjustified.

160.    Defendants were not privileged to interfere with Plaintiff's contracts with third parties.

161.    As a result of Defendant's intentional and unjustified interference, third parties have terminated their contracts with Plaintiff.

162.    Without Defendants' intentional and unjustified interference, Plaintiff would have received the contractual benefit of its contracts with third parties.

163.    As a result of Defendants' intentional and unjustified interference with Plaintiff's contracts, Plaintiff has suffered significant damages, including, but not limited to, loss of actual and potential customers, loss of actual and potential contracts, loss of actual and potential business opportunities, and harm to its business, goodwill and reputation.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

<u>**COUNT 9**</u>
**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

164.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

165.    Plaintiff had a reasonable expectation of an economic advantage from its Proprietary and Confidential Information and Trade Secrets.

166.    Defendants had access to the Company's Proprietary and Confidential Information and Trade Secrets, including, but not limited to, employee records, customer lists, pricing lists and agreements.

167.    Defendants used Plaintiff's Proprietary and Confidential Information and Trade Secrets to divert the Company's customers to other companies or competitors.

168.    Defendants disclosed the Proprietary and Confidential Information and Trade Secrets to divert the Company's customers to other companies or competitors.

169.    Defendants intentionally and wrongfully interfered with Plaintiff's economic advantage by using or disclosing its highly Proprietary and Confidential Information and Trade Secrets to compete with, outbid, price cut and/or otherwise divert the Company's customers to other companies or competitors.

170.    Defendants' interference with Plaintiff's economic advantage was unjustified and unlawful.

171.    A significant sum, if not nearly all, of Plaintiff's customers and accounts terminated their business relationship with Plaintiff following Defendants' intentional and unjustified interference with Plaintiff's economic advantage.

172.    But-for Defendants' intentional and unjustified interference with Plaintiff's economic advantage, Plaintiff would have received the economic advantage of its business relationships with its customers.

173.    As a result of Defendants' intentional and unjustified interference with Plaintiff's prospective economic advantage, Plaintiff has suffered significant damages, including, but not limited to, loss of actual and potential customers, loss of actual and potential contracts, loss of actual and potential business opportunities, and harm to its business, goodwill and reputation.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

**COUNT 10**
**BREACH OF DUTY OF LOYALTY**

174.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

175.    Plaintiff and Defendants have an employer-employee relationship.

176.    Defendants were both employed by the Plaintiff and held upper-management or executive positions of high trust, confidence and loyalty to the Company.

177.    Defendants breached their duty of loyalty to Plaintiff by intentionally, maliciously and willfully taking, stealing, misappropriating, infringing, using, adopting, disclosing, disseminating, self-dealing and/or otherwise converting Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks to their personal or business advantage by diverting Plaintiff's customers, suppliers, vendors and/or contractors to competitors, Defendants or persons or entities affiliated with Defendants.

178.    Defendants rendered substantial assistance, directly or indirectly, to Plaintiff's competitors.

179.    Defendants' breach of their duty of loyalty to Plaintiff proximately caused Plaintiff's damages.

180.    As a result of Defendants' breach of their duty of loyalty, Plaintiff has suffered substantial and ongoing harm and damages.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-

judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

## <u>COUNT 11</u>
## CIVIL CONSPIRACY

181.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

182.    Defendants committed unlawful acts by unlawful means as set forth fully herein.

183.    Defendants agreed or conspired, among themselves and possibly third-parties, to inflict a wrong or injury against Plaintiff by intentionally, maliciously and willfully stealing, misappropriating, infringing, using, adopting, disclosing, disseminating, self-dealing and/or otherwise converting Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks to their personal or business advantage by diverting Plaintiff's customers, suppliers, vendors and/or contractors to competitors, Defendants or persons or entities affiliated with Defendants.

184.    Defendants acted in concert to commit the unlawful acts set forth fully herein.

185.    Defendants conspired and committed overt acts that resulted in substantial damage to Plaintiff.

186.    As a result of Defendants' civil conspiracy, Plaintiff has suffered substantial and ongoing harm and damages.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

**COUNT 12**
**CONVERSION**

187.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

188.    Defendants acquired, took, stole, copied, downloaded, used, deleted, destroyed and/or otherwise assumed dominion and control over Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks.

189.    Defendants assumed and exercised dominion and control over Plaintiff's property, namely its Proprietary and Confidential Information, Trade Secrets and Trademarks, at the exclusion of Plaintiff.

190.    By depriving Plaintiff of its property, Defendants converted the Company's Proprietary and Confidential Information, Trade Secrets and Trademarks.

191.    As a result of Defendants' conversion, Plaintiff has suffered substantial and ongoing harm and damages.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

**COUNT 13**
**CORPORATE WASTE**

192.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

193.    Defendants engaged in stealing, misappropriating, infringing, using, adopting, disclosing, disseminating, self-dealing, converting and/or otherwise exchanging Plaintiff's corporate assets, specifically Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks,

with Plaintiff's competitors for no consideration or for such disproportionately small consideration to the detriment of the Plaintiff Company.

194.    Defendants irrationally and unreasonably squandered away Plaintiff's corporate assets by engaging in all of the foregoing unlawful acts.

195.    Defendants' unlawful acts as set forth fully herein constitute corporate waste.

196.    By unlawfully squandering or wasting Plaintiff's corporate assets, Defendants substantially harmed Plaintiff.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

## COUNT 14
## UNJUST ENRICHMENT

197.    Plaintiff repeats the averments of each and every one of the preceding paragraphs of this Complaint as though the same were set forth herein at length.

198.    Plaintiff conferred significant benefits upon Defendants consisting of multiple six-figure salaries in their positions in consideration for their work and loyalty to the Company.

199.    Defendants accepted and received the benefits conferred by Plaintiff over the course of their employment.

200.    Nevertheless, Defendants breached their duty of loyalty to the Company by intentionally, maliciously and willfully stealing, misappropriating, infringing, using, adopting, disclosing, disseminating, selling, self-dealing and/or otherwise converting Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks to their personal or business advantage by

diverting Plaintiff's customers, suppliers, vendors and/or contractors to competitors, Defendants or persons or entities affiliated with Defendants.

201.     Under the circumstances, it would be inequitable for Defendants to retain the benefits conferred by Plaintiff.

202.     As a result of Defendants' unlawful acts as set forth fully herein, Defendants have been unjustly enriched.

**WHEREFORE**, Plaintiff respectfully demands Judgment against Defendants for actual damages, profits, compensatory damages, punitive damages, together with pre-judgment and post-judgment interest, attorney's fees and costs of the action and all such other relief as the Court deems just and proper.

## **PRAYER FOR RELIEF**

Plaintiff respectfully demands Judgment against Defendants on each of the above Counts and claims as follows:

(a) Enjoining Defendants from using, disclosing, disseminating or otherwise misappropriating Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks to any other persons or entities;

(b) Enjoining Defendants from using, disclosing, disseminating or otherwise misappropriating Plaintiff's employee records containing confidential personal identifiers;

(c) Compelling Defendants to immediately secure and return to Plaintiff all stolen Company property including Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks and Plaintiff's employee records containing confidential personal identifiers;

(d) Finding that Defendants willfully, intentionally and/or recklessly violated the Federal Lanham Act, the Federal Defend Trade Secrets Act, the New Jersey Trade Secrets Act, and the New Jersey Computer Related Offenses Act;

(e) Finding that Defendants committed Unfair Competition, Misappropriation, Tortious Interference With Contract, Tortious Interference With Prospective Business Advantage, Breach of Duty of Loyalty, Civil Conspiracy, Conversion, Corporate Waste and Unjust Enrichment;

(f) Ordering Defendants to pay Plaintiff a reasonable royalty for each, every, any and all future use, disclosure, dissemination or otherwise misappropriation of Plaintiff's Proprietary and Confidential Information, Trade Secrets and Trademarks;

(g) Disgorging Defendants of all revenue, profits, wages, salaries and/or any other business or financial benefit derived, directly or indirectly, from Defendants' unlawful acts;

(h) Awarding Plaintiff compensatory damages for past, present and future damages, together with all interest and costs as provided by the applicable law;

(i) Awarding Plaintiff liquidated damages;

(j) Awarding, where statutorily permitted, treble damages;

(k) Awarding Plaintiff punitive damages;

(l) Awarding pre-judgment and post-judgment interest;

(m) Awarding Plaintiff costs and expenses of this action together with reasonable attorney's fees and costs; and

(n) Such further relief as this Court shall deem fit, equitable and just.

## <u>DEMAND FOR JURY TRIAL</u>

The Plaintiff hereby demands a trial by jury on all counts and as to all issues.

Dated: March 17, 2025                    Respectfully Submitted,

**FLORIO PERRUCCI STEINHARDT CAPPELLI & TIPTON, LLC**

BY:   _/s/ Donald Souders, Esquire_
            **Donald E. Souders, Jr., Esquire**
            (Attorney I.D. No. 040311991)
            **Ruby Khallouf, Esquire**
            (Attorney ID No. 249972017)
            91 Larry Holmes Drive, Suite 200
            Easton, PA 18042
            (Phone) (610) 691-7900
            (Fax)    (610) 691-0841
            (email) dsouders@floriolaw.com
            (email) rkhallouf@floriolaw.com
            *Attorneys for Plaintiff, Mount Materials, LLC*